UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MARK A. HERREN,

    Plaintiff,

  v.                                Case No. 20-CV-156

ANDREW M. SAUL,
**Commissioner of Social Security,**

    Defendant.

---

## DECISION AND ORDER

---

Mark A. Herren seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his claim for supplemental security income under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision will be reversed and the case remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

On April 14, 2016, Herren protectively filed an application for supplemental security income, alleging disability beginning December 8, 2015 (Tr. 14) due to depression, acid reflux, irritable bowel syndrome, sleep apnea, sciatica in both legs, arthritis in both shoulders, and multiple areas of pain (Tr. 282). Herren's application was denied initially and upon reconsideration. (Tr. 14.) Herren filed a request for a hearing, and a hearing was held before an Administrative Law Judge ("ALJ") on October 30, 2018. (Tr. 48–82.) Herren testified at the hearing, as did Bob Hammond, a vocational expert. (Tr. 48.)

In a written decision issued March 13, 2019, the ALJ found that Herren had the severe impairments of degenerative disc disease of the lumbar and cervical spine, arthritis of the bilateral shoulders, carpal tunnel syndrome, migraines, depressive disorder, and anxiety disorder. (Tr. 16.) The ALJ found that Herren did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). (Tr. 17–20.) The ALJ further found that Herren had the residual functional capacity ("RFC") to perform sedentary work, with the following limitations: has the option to alternate from a seated position to standing positions at the work station for a 15-minute period of time while remaining on task; limited to simple, routine, and repetitive tasks; limited to simple work-related decisions; and occasionally interact with co-workers, supervisors, and the public. (Tr. 20.)

Although Herren had no past relevant work (Tr. 26), the ALJ found that given Herren's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that he could perform. (Tr. 27–28.) As such, the ALJ found that Herren was not disabled since April 14, 2016, the application date. (Tr. 28.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Herren's request for review. (Tr. 1–7.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as

2

adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 2. *Application to This Case*

Herren takes the disfavored "kitchen sink" approach to attacking the ALJ's opinion. He makes a multitude of arguments, many of which are undeveloped and futile. This strategy should be carefully balanced against the clear risk that meritorious arguments will get lost in the shuffle. *See Nash v. Colvin*, No. 15 CV 50019, 2016 WL 4798957, at *7 n.7 (N.D. Ill. Sept. 14, 2016) ("'Kitchen sink' memoranda cause unnecessary work for the Government and the Court and generally contain unpersuasive arguments (as in this case) that only serve to cheapen and distract from the arguments with merit."). Herren does, however, raise one issue among the many that requires reversal. I will focus on this issue, but will also address the

3

Case 1:20-cv-00156-NJ   Filed 03/30/21   Page 3 of 16   Document 17

remainder to provide guidance both to the ALJ on remand and to plaintiffs in future Social Security cases.

### 2.1 Failure to Support Physical RFC Finding

As to his physical limitations, the ALJ limited Herren to sedentary work, with the option to alternate from a seated position to a standing position at the work station for a 15-minute period of time while remaining on task. (Tr. 20.) Herren argues the ALJ failed to explain how often Herren would be changing positions. (Pl.'s Br. at 12–13.) The ALJ based this limitation on the opinion of occupational therapist Troy Gutzman, who evaluated Herren in June 2018. (Tr. 24.) Gutzman opined that due to Herren's limited ability to sit, he would have to alternate between sitting and other tasks in order to tolerate the sedentary level of work for eight hours per day, forty hours per week. (Tr. 753.)

Social Security Ruling 96-9p explains that an individual may need to alternate the required sitting of sedentary work by standing periodically. The Ruling states that if this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. It further explains that the extent of the erosion will depend on specific record facts, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. Thus, the RFC assessment "must be specific as to the frequency of the individual's need to alternate sitting and standing."

In this case, the RFC, and the corresponding hypothetical to the VE, limits Herren to the option to switch from a seated position to a standing position for a fifteen minute period of time, remaining on-task while standing. (Tr. 79.) The opinion is clear that the ALJ bases the sit-stand option on Gutzman's opinion regarding accommodating Herren's limited ability to sit. What is unclear, however, is the basis for the fifteen minutes of standing and how

4

frequently Herren is allowed to switch positions. Is it every hour? At will? Neither of these questions is clear from the ALJ's decision. And as SSR 96-9p states, the level of erosion of the unskilled sedentary work occupational base will depend on the frequency of the need to alternate between sitting and standing and the length of time needed to stand. Given this lack of clarity, I am unable to follow the ALJ's reasoning. Herren also faults the ALJ's determination that Herren will be on-task the entire time he changes positions. (Pl.'s Br. at 13.) I agree that the ALJ's basis for finding Herren on-task the entire time he changes positions, especially if the change is happening rather frequently, is unclear. For these reasons, remand is required.

As to Herren's remaining arguments of error regarding his physical RFC, he spills much unnecessary ink on general arguments untethered to the facts of his specific case. The arguments are worth addressing because they are frequently made in these "kitchen sink" type briefs.

### 2.1.1 Reconciliation of Step Two with Step Four

Herren argues that despite finding his arthritic shoulders, carpal tunnel syndrome, and migraines to be severe impairments at step two, the ALJ failed to include any corresponding limitations for these impairments at step four. (Pl.'s Br. at 11–12.) Herren argues that this apparent inconsistency between a step two and step four finding "requires remand." (Pl.'s Reply Br. at 3, Docket # 16, quoting *Willems v. Colvin*, 13-CV-130, 2014 WL 996503, *4 (E.D. Wis. Mar. 13, 2014) ("A severe impairment is an impairment which significantly limits a claimant's physical or mental abilities to do basic work activities . . . By definition, therefore, the impairment has some impact on the claimant's ability to work.").)

While it is understandable why Herren essentially argues for a bright-line rule, it demonstrates a misunderstanding of the difference between steps two and four in the sequential analysis. At step two, a claimant is not disabled unless the ALJ finds that the claimant has a severe impairment. *See* 20 C.F.R. § 404.1520(a)(4)(ii). The regulations define a severe impairment as "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). At step four, the ALJ determines RFC, which is the most the claimant can do in a work setting "despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004). Thus, as one court aptly stated, "[i]t seems odd that an impairment that 'significantly limits' a claimant's ability to work, 20 C.F.R. § 404.1520(c), could have no effect on what work a claimant can do despite the claimant's limitations, 20 C.F.R. § 404.1545(a)(2)." *Davis v. Comm'r of Soc. Sec.*, No. 6:12-CV-1694-ORL-36, 2013 WL 6182235, at *6 (M.D. Fla. Nov. 25, 2013). And many courts agree. The *Davis* court cited multiple district courts across the country that reversed due to this apparent inconsistency. *Id.* (collecting cases).

The "prevailing rule," however, is that an ALJ does not err solely because he finds an impairment "severe" at step two but does not attribute any limitation to that impairment in assessing the claimant's RFC. *Id.* The rationale lies in the purpose of the step two inquiry. The majority of circuits, including the Seventh Circuit, have found that the ALJ's step two determination is "a *de minimis* screening for groundless claims." *Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) (internal quotation and citation omitted). An impairment is only "not severe" if it is "a slight abnormality" that has "no more than a minimal effect on the ability to do basic work activities." *Id.* (internal quotation and citation omitted). Thus, only "claims based on the most trivial impairments" should be rejected as non-severe. *McDaniel v. Bowen*,

6

800 F.2d 1026, 1031 (11th Cir. 1986). Given the purpose of step two is to weed out obviously non-meritorious claims, a finding that a claimant's impairment is "severe" does not necessarily mean that the impairment will affect the RFC. *See Davis*, 2013 WL 6182235, at *6; *see also Winston v. Berryhill*, No. 3:16-CV-419-BH, 2017 WL 1196861, at *13 (N.D. Tex. Mar. 31, 2017), *aff'd*, 755 F. App'x 395 (5th Cir. 2018) ("The ALJ must clearly consider the severe impairments in determining the claimant's RFC, not necessarily assess limitations for each severe impairment."); *Sarah B. v. Berryhill*, No. 1:17-CV-0080-BL, 2018 WL 3763837, at *8 (N.D. Tex. June 29, 2018), *report and recommendation adopted*, No. 1:17-CV-080-C-BL, 2018 WL 3756944 (N.D. Tex. Aug. 8, 2018) ("[T]hat Step 2 only requires 'a *de minimis* showing' provides an apt reminder that courts must vigilantly keep in mind the differences between an assessment of RFC and a Step 2 severity finding.") (internal citation omitted); *Dowell v. Colvin*, No. 1:12CV1006, 2015 WL 1524767, at *3 (M.D.N.C. Apr. 2, 2015) ("[A] finding that a claimant has a severe impairment at step two does not necessarily require a corresponding restriction in the RFC."); *Carrier v. Astrue*, No. CIV. SAG-10-3264, 2013 WL 136423, at *1 (D. Md. Jan. 9, 2013) ("One of her arguments is the ALJ's RFC was inconsistent with his Step Two findings of bilateral severe hand impairments. That argument is deficient, because there is no requirement that every severe impairment correlate with a particular restriction in the RFC.").

Herren's case exemplifies why remand based on a bright-line rule is imprudent. Herren argues that the ALJ found his arthritis of the bilateral shoulders to be a severe impairment, but failed to include an overhead reaching limitation. (Pl.'s Reply Br. at 2.) Herren does not, however, point to a single medical record supporting his assertion that he requires such a limitation. The ALJ credited that upon physical examination, Herren exhibited decreased

7

range of motion of his cervical and lumbar spine and his shoulders and limited Herren accordingly to sedentary work with a sit-stand option. (Tr. 21–22.) Herren cites to the opinions of State Agency physicians Dr. Pat Chan and Dr. Stephanie Green in support of his need for an overhead reaching limitation. (Tr. 128, 145.) While it is true that both doctors opined that due to his cervical spine difficulties (Dr. Chan) or due to his shoulder limitations (Dr. Green) he should have an overhead reaching limitation (*id.*), the ALJ assigned minimal weight to both opinions, finding them inconsistent with the objective medical evidence (Tr. 24). And the ALJ is correct. The medical evidence does not support a reaching limitation.

As to Herren's carpal tunnel syndrome, he argues the ALJ should have included limitations to account for Herren's decreased hand grip. In support, Herren points to a single record prior to his alleged onset date showing below normal bilateral grip strength. (Tr. 377, 388.) The ALJ considered Herren's alleged symptoms due to carpal tunnel syndrome, but found that the record lacked evidence of treatment or studies documenting the severity of the condition. (Tr. 22.) The ALJ also pointed to Herren's own testimony in which he stated that he was not receiving treatment for carpal tunnel syndrome. (Tr. 62.) Again, Herren's argument for remand rests solely on the proposition that because the ALJ found the impairment severe, he *must* provide a specific accommodation. (Pl.'s Reply Br. at 4.) But no evidence supports a limitation. Thus, if the case was remanded solely on the alleged inconsistency between the step two and step four findings, what would the ALJ do differently on remand?

Herren also argues the ALJ found his migraines severe, but failed to include limitations to account for his need to lie down or his sensitivity to light. (Pl.'s Br. at 12.) The ALJ, however, specifically considered that Herren sought treatment for migraines throughout the

8

relevant period, but determined that the records showed that he treats his headaches symptomatically and that they are controlled with medication. (Tr. 22.) The record supports the ALJ's finding. The record indeed shows that Herren has a history of migraines, even going to the emergency room in August 2017 because of a migraine. (Tr. 681.) However, the records also show that Herren was prescribed meclizine, which he stated helped the migraines. (*Id.*) In September 2017, Herren stated that his "headaches are doing well" and had "no major migraines lately." (Tr. 684.) Herren was prescribed Imitrex on August 14, 2017, but did not need to use it. (*Id.*) His treating physician, Dr. Rachael VandenLangenberg noted that his migraines were stable on his current management regime. (Tr. 683.) This is consistent with Herren's hearing testimony, when he stated that he takes medication whenever he experiences a migraine. (Tr. 62–63.)

Social Security determinations rest on the specific record of the claimant at hand. They do not lend themselves well to bright-line rules for remand. Thus, plaintiffs should take care to tailor their arguments for remand to the specific facts of their case rather than on generic legal concepts.

### 2.1.2 Evidentiary Deficit

Herren raises another argument that is common and often undeveloped by plaintiffs—that the ALJ created an evidentiary deficit by failing to adopt any of the physician opinion evidence. (Pl.'s Br. at 13.) The law is clear that in determining RFC, an ALJ "must consider the entire record, but the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). Herren's opening brief raises the "evidentiary deficit" issue with little discussion. Thus, in response to the Commissioner's citation to

*Schmidt*, Herren acknowledges in his reply brief that while "the ALJ is not required to adopt a certain physician opinion . . . by not adopting a medical opinion, the ALJ faced an evidentiary deficit." (Pl.'s Reply Br. at 6.) In so doing, Herren relies on *Suide v. Astrue*, 371 F. App'x 684 (7th Cir. 2010) for the proposition that "lack of reliance on any physician opinion evidence created an evidentiary deficit." (*Id.*)

As stated above, Social Security determinations are very fact specific. *Suide* never created a bright-line rule that rejection of physician opinion evidence automatically means the ALJ's decision is unsupported by substantial evidence. Remand was required in *Suide* because the rejection of the physician's medical opinion left the ALJ's RFC determination untethered to any record evidence. And an ALJ is certainly prohibited from "playing doctor" by filling in evidentiary gaps in the record with his own lay opinion. *See Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003). But that is not what happened in this case. The ALJ clearly relied on Gutzman's opinion, of which he assigned "great weight," in making his physical RFC determination. (Tr. 24.) While it is understandable to challenge the physical RFC in this case on the basis of the sit-stand option, arguing an "evidentiary deficit" when none exists does nothing more than waste time and detract from the meritorious arguments. Again, I advise plaintiffs to refrain from making general legal arguments untailored to the specific facts of their case and more diligently choose between the arguments raised.

### 2.2 Failure to Support Mental RFC Finding

As to his mental limitations from a depressive disorder and an anxiety disorder, the ALJ limited Herren to simple, routine, and repetitive tasks; simple work-related decisions; and to occasional interaction with co-workers, supervisors, and the public. In so finding, the ALJ assigned great weight to State Agency medical consultant Dr. Lisa Fitzpatrick, who

10

Case 1:20-cv-00156-NJ   Filed 03/30/21   Page 10 of 16   Document 17

opined Herren was moderately limited in his abilities to understand, remember, and apply information; concentrate, persist, or maintain pace in the work setting; and adapt and manage himself. (Tr. 25, 146–47.) Within these limitations, Dr. Fitzpatrick specifically found Herren moderately limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances and in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 147.) While the ALJ included a detailed explanation of why he was adopting Dr. Fitzpatrick's opinion, including citing to her narrative explanation regarding the limitations for sustained concentration and persistence (Tr. 25, citing Tr. 147), as Herren argues, the ALJ did not specifically address the moderate limitations in performing activities within a schedule, maintain regular attendance, and being punctual within customary tolerances (Pl.'s Br. at 14).

As discussed above, Social Security is not an area of law lending itself well to bright-line rules. And while there is no bright-line rule that limitations to simple, routine tasks and limited interactions with others are insufficient to accommodate a moderate limitation in the area of concentration, persistence, or pace, given the Seventh Circuit's most recent precedent, it comes pretty close. *See Hoeppner v. Berryhill*, 399 F. Supp. 3d 771, 778 (E.D. Wis. 2019) ("It is now abundantly clear that under the law of this circuit, the ALJ must include in the RFC, and in the corresponding hypothetical question to the VE, all of the limitations the ALJ finds in the paragraph B criteria at steps 2 and 3 of the sequential evaluation, as well as those in the 'summary conclusions' or 'worksheet' section of the MRFCA form.").[1] The Seventh Circuit

---

[1] This issue arises frequently in Social Security cases. Interestingly, the Seventh Circuit since *Hoeppner* has affirmed, in unpublished decisions, many ALJ decision in which the claimant had a moderate rating in the broad

has found that while an ALJ "need not use 'specific terminology,'" the court has "'repeatedly rejected the notion that a hypothetical . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.'" *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) (quoting *Yurt v. Colvin*, 758 F.3d 850, 858–59 (7th Cir. 2014)); *see also Mischler v. Berryhill*, 766 F. App'x 369, 376 (7th Cir. 2019) (finding that while a "task can be simple," a person "with a poor attention span may still become distracted and stop working").

Thus, on remand, to the extent the ALJ finds the record evidence does not support a moderate limitation opined in the "worksheet" section of the MRFC, the ALJ should take care to specifically address his rejection of that limitation to comply with the Seventh Circuit's precedent in *DeCamp* and *Yurt*.

### 2.3 Failure to Properly Address Subjective Symptoms

Herren argues the ALJ improperly evaluated his subjective symptoms, impermissibly relying on his activities of daily living and failure to pursue alternative methods of treatment in discounting his allegations of disabling symptoms. The Commissioner's regulations set forth a two-step test for evaluating a claimant's statements regarding his symptoms. First, the ALJ must determine whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p. Second, if the claimant has such an impairment, the ALJ must evaluate the intensity and persistence of the symptoms to determine the extent to which they limit the claimant's ability to work. *Id.* If

---

functional area of concentration, persistence, or pace, including restrictions to simple, routine, repetitive tasks. *See, e.g.*, *Peeters v. Saul*, No. 19-2530, 2020 WL 5523204 (7th Cir. Sept. 15, 2020); *Bruno v. Saul*, 817 F. App'x 238 (7th Cir. 2020); *Morrison v. Saul*, 806 F. App'x 469 (7th Cir. 2020); *Kuykendoll v. Saul*, 801 F. App'x 433 (7th Cir. 2020); *Urbanek v. Saul*, 796 F. App'x 910 (7th Cir. 2019). Perhaps this indicates a shift away from the Court's decisions in *DeCamp* and *Yurt*. But until the Seventh Circuit says as much in a precedential decision, what controls is the Court's published precedent.

the statements are not substantiated by objective medical evidence, the ALJ must evaluate the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record and considering a variety of factors, including the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes; treatment, other than medication, used for relief of the symptoms; other measures the claimant uses to relieve the symptoms; and any other factors concerning the claimant's functional limitations due to the symptoms. *Id.*

In discounting Herren's subjective symptoms, the ALJ considered both Herren's daily activities and his lack of treatment, both permissible factors to consider under SSR 16-3p. Again, Herren's argument on this issue is heavy on general Seventh Circuit law and lacking in application of the law to the facts of this specific case. An ALJ is certainly permitted to discount a claimant's subjective statements if inconsistent with the evidence of the claimant's daily activities, as it may suggest that the claimant's statements regarding his symptoms are exaggerated. In this case, the ALJ considered Herren's retained ability to care for himself and his cats, drive, prepare simple meals, perform household chores, ride a moped, and run errands. (Tr. 23.) Even more importantly, the ALJ considered the fact that Herren was the primary caregiver of his wife, who is paraplegic. (Tr. 23, 474.) The record indicates in caring for his wife, who he states needs "a lot of help" (Tr. 584), he transfers her to her wheel chair (Tr. 480), which presumably takes some amount of strength. The record also indicates he was helping a friend lift an object. (Tr. 602.) Thus, the ALJ did not fail to explain how Herren's activities of daily living undermined his subjective complaints.

13

Herren also faults the ALJ for relying on his lack of treatment without proper consideration of the reasons why. (Pl.'s Br. at 20.) Herren argues the records sets forth numerous reasons why Herren did not pursue alternative treatments, including cost, effectiveness, and side effects. (Pl.'s Reply Br. at 15.) But Herren's purported reasons are inconsistent with the record evidence. For example, Herren's treating providers frequently recommended Herren pursue psychiatric treatment. He told one treating provider that he "cannot afford even $1 for co-pay," though the provider told him that "his insurance indicates there is no co-pay." (Tr. 472.) He told another treating physician that he could not afford a $3 co-pay for physical therapy sessions. (Tr. 535.) Despite this statement, he did attend thirteen physical therapy sessions in 2017 but then quit, despite the records showing he made significant improvement and could be discharged after seventeen sessions. (Tr. 655.) Herren then testified contrary to his medical records that physical therapy "made everything worse." (Tr. 60.)

Herren also had multiple, inconsistent reasons for refusing epidural steroid injections, ranging from his testimony that "everything that [he] looked up . . . basically pointed to the fact that there is like a one and 100 chance that it would actually work" (Tr. 60, 678) and the fact he had "spoken to over a 100 people and they all say it does not work" (Tr. 467), to a fear of the side effects (Tr. 533). His treating provider urged him to "keep an open mind" regarding the injections and consult with pain management professionals (rather than Google), noting that he may benefit from SI joint injections due to the fact his pain was most likely due to SI joint inflammation. (Tr. 678.)

Herren failed to follow-up with a gastroenterologist regarding his stomach issues, stating that they could not get him in for afternoon appointments, despite his treating

14

physician contacting "both [the] pain clinic and gastroenterology who are able to get him in the afternoon even today." (Tr. 465.) A treating provider noted Herren was "inflexible" on scheduling appointments, demanding only afternoon appointments. (Tr. 474, 535.)

In fact, the record is rife with examples of Herren refusing treatment over the suggestion of his treating providers, with similarly inconsistent reasons. The ALJ did not err in using this multitude of evidence to discount the severity of Herren's subjective symptoms.

### 2.4 Weight Given to Treating Provider

Finally, Herren argues that the ALJ erred in assigning minimal weight to the opinion of his treating mental health nurse practitioner, Amy Jo Schwarzenbart. (Pl.'s Br. at 21.) In weighing medical opinions, generally more weight is given to the medical opinions of treating sources. 20 C.F.R. § 416.927.[2] Because Schwarzenbart, as a nurse practitioner, was not considered an acceptable medical source under the regulations applicable at the time of Herren's application, her opinion was not entitled to any special weight. The ALJ need only evaluate it under § 416.927(c)(1)–(6), which includes the providers': examining relationship; treatment relationship; length of treatment relationship; supportability, consistency, and specialization; and other relevant factors. The ALJ diligently explained why he assigned minimal weight to her opinion, utilizing the relevant factors outlined in the regulation. He considered the opinion's inconsistency with the record evidence, including her own examination notes, the fact she had only seen Herren for three months when rendering her opinion, and the fact that the opinion is internally inconsistent and fails to articulate specific limitations. (Tr. 25.)

---

[2] On January 18, 2017, the SSA published the final rules entitled "Revisions to Rules Regarding the Evaluation of Medical Evidence" in the Federal Register (82 Fed. Reg. 5844). The final rules became effective on March 27, 2017. For claims (like the one at issue here) filed before March 27, 2017, the SSA continues to apply the rules that were in effect at the time of the ALJ's decision. *See* 20 C.F.R. § 416.927.

15

Case 1:20-cv-00156-NJ   Filed 03/30/21   Page 15 of 16   Document 17

The ALJ's assessment of this opinion is well-supported by the record. Schwarzenbart assesses marked to extreme limitations in most of the functional categories, which is inconsistent with her own records and the records as a whole. Furthermore, Schwarzenbart opines that Herren cannot work on a regular and sustained basis because of his mental impairments, but then states that he cannot work because of his pain issues. (Tr. 772.) Again, given the clear futility of this argument, it is unclear why Herren chose to raise it.

## CONCLUSION

While Herren found fault in almost every aspect of the ALJ's decision, only one issue mandates remand—the ALJ's failure to properly articulate the basis for Herren's sit-stand option. As to Herren's mental RFC assessment, given the Seventh Circuit precedent, the ALJ should carefully address it on remand. The remainder of the issues served as unnecessary filler on which the ALJ clearly did not err. This case is remanded pursuant to 42 U.S.C. § 405(g), sentence four for reconsideration consistent with this decision.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 30th day of March, 2021.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge